OPINION *Page 2 
{¶ 1} Defendant-Appellant, Robert Golden, appeals from his conviction of one count of sexual imposition, a misdemeanor of the third degree. The State of Ohio is Plaintiff-Appellee.
 {¶ 2} This matter stems from events that occurred between February, 2005, and December, 2005. During those months, A.C., a young girl who turned 14 on February 19, 2005, reported being repeatedly sexually molested by Appellant. At the time, A.C. lived with her biological father; however, she would visit her mother every other weekend and her mother lived with Appellant. Appellant and A.C.'s mother were friends who began dating sometime during 2005.
 {¶ 3} A.C. testified that during 2007, she was residing in a group home when she disclosed to an employee of the home that she had been sexually assaulted by Appellant in 2005. She stated that Appellant began the contact by holding her on his lap and running his hands through her hair and that the conduct escalated to Appellant groping her breast, both over and under her clothing and that Appellant stuck his hand down her pants and tried to insert his finger into her vagina. She stated that he did not successfully do so, but that his finger was touching the skin outside of her vagina. A.C. also stated that Appellant would repeatedly kiss her, "like a big movie star kiss" and that he attempted to persuade her to touch his penis multiple times.
 {¶ 4} A.C.'s brother, I.C., testified that he observed Appellant being affectionate with his sister and thought that their relationship was "closer than normal." He stated that he overheard Appellant call A.C. upstairs at one point and so he followed A.C. upstairs without her knowledge. He heard Appellant say to her, "well, why don't you *Page 3 
give me a kiss goodbye." I.C. did not observe the kiss, but instead went back downstairs and told his mom what he heard. Neither I.C. or his mother confronted Appellant or A.C. about what I.C. overheard.
 {¶ 5} Appellant, who is thirty-nine years old, spoke to the police during the investigation of this case. Detective John Von Spiegel interviewed Appellant and stated that he appeared to be nervous and had poor eye contact throughout the interview. He stated that Appellant made several statements to him regarding the accusations, including, "I might have kissed her"; "I don't believe on the lips"; "I never touched Amber's breast. Not knowingly."; "We hugged. We were friends."; "I was a heavy drinker"; and "I don't think this could have happened when I was drinking."
 {¶ 6} Detective Von Spiegel asked Appellant, "Could it possibly have happened?" Appellant responded, "Well I was really into drugs and drinking back then, but I don't think it happened. I don't think I was that out of it." He also stated, "I had a real bad problem with crack," and "I don't remember her touching my penis." Finally, he stated, "I guess anything's possible, but I don't remember that."
 {¶ 7} Appellant was subsequently charged with one count of sexual imposition, a misdemeanor of the third degree. Appellant exercised his right to a jury trial and was found guilty as charged.
 {¶ 8} Appellant raises two Assignments of Error:
 {¶ 9} "I. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE. *Page 4 
 {¶ 10} "II. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO DISMISS REGARDING THE DEFECTIVE INDICTMENT."
 I. {¶ 11} In his first assignment of error, Appellant argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 12} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 13} Conversely, when analyzing a manifest weight claim, this court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. *Page 5 
 {¶ 14} Appellant alleges that no corroborating evidence exists in this case and thus there was insufficient evidence to support Appellant's conviction. We disagree.
 {¶ 15} Corroborating evidence in a sexual imposition case need not be "proof of the facts which are the very substance of the crime charged" but, rather, may consist of "minimal evidence." City of Avon Lake v.Pinson (1997), 119 Ohio App.3d 567, 570, 695 N.E.2d 1178, quotingState v. Economo, 76 Ohio St.3d 56, 59, 666 N.E.2d 225. "Slight circumstances or evidence which tends to support the victim's testimony" is sufficient. Id. at syllabus.
 {¶ 16} A.C. testified that Appellant would run his hands through her hair and that the conduct escalated to Appellant groping her breast, both over and under her clothing and that Appellant stuck his hand down her pants and tried to insert his finger into her vagina. She stated that he did not successfully do so, but that his finger was touching the skin outside of her vagina. A.C. also stated that Appellant would repeatedly kiss her, "like a big movie star kiss" and that he attempted to persuade her to touch his penis multiple times.
 {¶ 17} A.C.'s brother, I.C., testified that he observed Appellant being affectionate with his sister and thought that their relationship was "closer than normal." He stated that he overheard Appellant call A.C. upstairs at one point and so he followed A.C. He heard Appellant say to her, "well, why don't you give me a kiss goodbye." I.C. did not observe the kiss, but instead went back downstairs and told him mom what he heard. Neither I.C. or his mother confronted Appellant or A.C. about what I.C. overheard.
 {¶ 18} Appellant's own statements were not denials of the accusations. Detective John Von Spiegel interviewed Appellant and stated that he appeared to be nervous *Page 6 
when he stated, regarding the accusations, "I might have kissed her"; "I don't believe on the lips"; "I never touched Amber's breast. Not knowingly."; "We hugged. We were friends."; "I was a heavy drinker"; and "I don't think this could have happened when I was drinking."
 {¶ 19} Detective Von Spiegel asked Appellant, "Could it possibly have happened?" Appellant responded, "Well I was really into drugs and drinking back then, but I don't think it happened. I don't think I was that out of it." He also stated, "I had a real bad problem with crack," and "I don't remember her touching my penis." Finally, he stated, "I guess anything's possible, but I don't remember that."
 {¶ 20} Appellant also argues that because inconsistent testimony was presented at trial, his convictions should be reversed. A defendant "is not entitled to reversal on manifest weight grounds merely because inconsistent evidence was offered at trial, `as "[t]he trier of fact is free to believe or disbelieve any or all of the testimony presented.'"State v. Favor, 10th Dist. No. 08AP-215, 2008-Ohio-5371, at ¶ 10. The determination of weight and credibility to be given to witness testimony is for the trier of fact. Further, the trier of fact is free to believe or disbelieve all or any of the testimony. As a result, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, 10th Dist. No. 02AP-245, 2002-Ohio-7037, at ¶ 22
 {¶ 21} Upon careful review of the record, we find Appellant's conviction was supported by sufficient evidence and corroborating evidence was presented in the form of I.C.'s testimony and Appellant's own statements. A trier of fact could have found all *Page 7 
the essential elements of the crime of sexual imposition beyond a reasonable doubt, and the jury did not lose its way by doing so in this case.
 {¶ 22} Appellant's first assignment of error is overruled.
 II. {¶ 23} In his second assignment of error, Appellant claims that his indictment violated State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624,885 N.E.2d 917 (Colon I) because it did not specify the mens rea of recklessness for the charge of sexual imposition. He argues that the indictment was defective and therefore resulted in structural error. We disagree.
 {¶ 24} Colon I, supra, concerned an indictment for robbery in violation of R.C. 2911.02(A)(2), which provides:
 {¶ 25} "No person, in attempting or committing a theft offense * * * shall do any of the following: * * *
 {¶ 26} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm."
 {¶ 27} The Colon I court held:
 {¶ 28} "R.C. 2911.02(A)(2) does not specify a particular degree of culpability for the act of `inflict[ing], attempt[ing] to inflict, or threaten [ing] to inflict physical harm,' nor does the statute plainly indicate that strict liability is the mental standard. As a result, [pursuant to R.C. 2901.21(B),] the state was required to prove, beyond a reasonable doubt, that the defendant recklessly inflicted, attempted to inflict, or threatened to inflict physical harm." Colon, 2008-Ohio-1624, ¶ 14,118 Ohio St.3d 26, 885 N.E.2d 917.
 {¶ 29} In the present case, Appellant was charged with and convicted of one count of sexual imposition in violation of R.C. 2907.06(A)(4), which states: *Page 8 
 {¶ 30} "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * *
 {¶ 31} "(4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person."
 {¶ 32} Sexual contact means: "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "Sexual arousal" and "sexual gratification" are not defined in the Ohio Revised Code. See In re Anderson (1996), 116 Ohio App.3d 441, 443,688 N.E.2d 545. However, "R.C. 2907.01(B) contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." State v. Gesell, 12th Dist. No. CA2005-08-367, 2006-Ohio-3621, at ¶ 23, quoting State v. Astley
(1987), 36 Ohio App.3d 247, 250, 523 N.E.2d 322.
 {¶ 33} As this Court noted in State v. Vance, 5th Dist. No. 2007-COA-035, 2008-Ohio-4763, the Supreme Court reconsideredColon I in State v. Colon ("Colon II"), 119 Ohio St.3d 204,2008-Ohio-3749, 893 N.E.2d 169. In Colon II, the Court held:
 {¶ 34} "Applying structural-error analysis to a defective indictment is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment. In Colon I, the error in the indictment led to errors that `permeate[d] *Page 9 
the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence.' Id . at ¶ 23, 885 N.E.2d 917, citing State v.Perry, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 17. Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim. R. 52(B) plain-error analysis." Id. at ¶ 8. The Court noted the multiple errors that occurred in Colon I:
 {¶ 35} "As we stated in Colon I, the defect in the defendant's indictment was not the only error that had occurred: the defective indictment resulted in several other violations of the defendant's rights. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 29. InColon I, we concluded that there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless. Id. at ¶ 30, 885 N.E.2d 917. Further, the trial court did not include recklessness as an element of the crime when it instructed the jury. Id. at ¶ 31, 885 N.E.2d 917. In closing argument, the prosecuting attorney treated robbery as a strict-liability offense. Id. Colon II at ¶ 6." See also, Vance, supra at ¶ 51-53.
 {¶ 36} Unlike Colon I, the four prongs necessary to establish structural error are not met in this case.
 {¶ 37} First, the Supreme Court has held that an indictment that tracks the language of the statute setting forth the charged offense does not have to separately set forth the elements of a predicate offense. State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707,853 N.E.2d 1162. "The state's failure to list the elements of a predicate *Page 10 
offense in the indictment in no way prevents the accused from receiving adequate notice of the charges against him." Id., at ¶ 11. The complaint in this case tracks the language of R.C. 2907.06.
 {¶ 38} Moreover, a plain reading of this statute indicates that the legislature intended to impose strict liability with respect to R.C. 2907.06(A)(4).
 {¶ 39} R.C. 2907.06 states:
 {¶ 40} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 41} "(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.
 {¶ 42} "(2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired.
 {¶ 43} "(3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact.
 {¶ 44} "(4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or notthe offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.
 {¶ 45} "(5) The offender is a mental health professional, the other person or one of the other persons is a mental health client or patient of the offender, and the offender *Page 11 
induces the other person who is the client or patient to submit by falsely representing to the other person who is the client or patient that the sexual contact is necessary for mental health treatment purposes." (Emphasis added).
 {¶ 46} The legislature, in drafting R.C. 2907.06(A)(1), (2), and (3), specified a mens rea of knowing, but did not do so in R.C. 2907.06(4) or (5).
 {¶ 47} R.C. 2901.21(B) states:
 {¶ 48} "(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 49} A review of R.C. 2907.06(A)(4) indicates that the legislature intended to impose strict liability to protect those who are some of the most vulnerable members of our society, our children. While a statute's silence on the question of culpability does not necessarily indicate a purpose to impose strict liability, where the General Assembly specifically differentiates degrees of culpability within the same statute, that differentiation demonstrates a plain indication of its purpose to impose strict liability. State v. Spicer (March 30, 1994), 2nd Dist. No. 93CA55, citing State v. WAC (1981),68 Ohio St.2d 84, 428 N.E.2d 428.
 {¶ 50} In subsections of R.C. 2907.06 where the legislature intended to have a mens rea of knowingly, they used the word "knows". R.C. 2907.06(A)(4) is devoid of this mens rea and presumably the legislature, in writing "whether or not the offender *Page 12 
knows" intended to make this subsection strict liability. Accordingly, the trial court did not err when it failed to instruct the jury that the state was required to prove that Appellant acted recklessly, as argued by Appellant. See generally, State v. Tanner, 5th Dist. No. 06CA56, 2007-Ohio-1803; see also State v. Singleton, 11th Dist. No. 2002-L-077, 2004-Ohio-1517 (holding that R.C. 2907.03(A)(5) requires the imposition of strict liability where legislature includes specific mens rea in some subsections but not other subsection involving protection of children).
 {¶ 51} Finally, the jury had notice that purpose was an element of the crime of sexual imposition. The court instructed the jury as follows:
 {¶ 52} "Before you can find the defendant guilty, you must find beyond a reasonable doubt that as a continuous course of conduct from on or about February 19, 2005 to on or about December 13, 2005, and in Stark County, Ohio, the defendant had sexual contact with another, [A.C.], who was not his spouse, and the other person was thirteen years of age or older but less than sixteen years of age, whether or not the defendant knew the age of such person, and the defendant was at least eighteen years of age and four or more years old [sic] than such other person. Sexual contact means any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttocks, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.". *Page 13 
 {¶ 53} As structural error is not present in this case, this Court may analyze the error in this case pursuant to the Crim. R. 52(B) plain-error analysis. Colon II, supra, at ¶ 7.[1]
 {¶ 54} Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240, quoting State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118,802 N.E.2d at 646.
 {¶ 55} Given that the trial court did instruct on the definition of sexual contact, and that strict liability exists with respect to the element of whether or not the Appellant knew the age of the victim, we do not find that plain error exists in this case, nor do we find such a manifest miscarriage of justice that warrants a reversal.
 {¶ 56} Appellant's second assignment of error is overruled. *Page 14 
 {¶ 57} Based on the foregoing, we find Appellant's claim to be without merit. The decision of the Canton Municipal Court is affirmed.
Delaney, J. Hoffman, P.J. and Wise, J. concur. *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Canton Municipal Court is affirmed. Costs assessed to appellant.
[1] Moreover, Appellant failed to raise the issue of a defective indictment prior to trial. He only raised the issue after the jury had been sworn and the first witness had been called to the stand. Accordingly, plain error applies for that reason alone. See Crim. R. 12(C). *Page 1