OPINION *Page 2 
{¶ 1} Defendant-Appellant, Shane Green, appeals from his convictions of one count of rape of a child under the age of ten, a felony of the first degree, and one count of gross sexual imposition, a felony of the third degree. The State of Ohio is Plaintiff-Appellee.
 {¶ 2} Appellant was indicted on January 8, 2008, by the Knox County Grand Jury on one count of rape of a child under the age of ten, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a felony of the third degree. The facts underlying these charges were as follows:
 {¶ 3} Between May, 2007, and July, 2007, Appellant was accused of raping his eight-year-old biological daughter, K.G. Specifically, in December, 2007, K.G. informed her mother, Melissa Byrd, Knox County Children's Services worker, Melissa Reich, and Nationwide Children's Hospital Social Worker, Alison Ferne, that on multiple occasions, Appellant touched her vagina with his finger, that he performed oral sex on her, that he touched her buttocks with his hand, that he placed his penis into her mouth, and that he attempted to insert his penis into her vagina, but that she crossed her legs to stop him because it hurt.
 {¶ 4} Captain Richard Brenneman of the Knox County Sheriff's Office interviewed Appellant on December 24, 2007. During that interview, Appellant admitted to orally raping his daughter "probably three times." He also stated that he "put [his] tongue in there". When asked how many times he made K.G. put her mouth on his penis, he stated once. Captain Brenneman asked Appellant if he remembered *Page 3 
ejaculating in K.G.'s mouth and he responded, "Yeah, I guess." He admitted that he tried to insert his penis into her vagina "a couple of times" and that these incidents took place in his apartment at 200 Eastgate Drive, in his bedroom, with the door closed and locked while his younger daughter, S.G. was outside of the room, knocking on the door trying to get in. He told S.G. that she could not come in because he and K.G. were "folding socks" but that she could come in and fold socks the next time.
 {¶ 5} When asked why he did these things, Appellant admitted that he "did something wrong." He also stated that "I wouldn't think that I would do that, but no, I wouldn't say my daughter is lying."
 {¶ 6} Appellant also testified before the Grand Jury and that testimony was admitted into evidence. When asked why he would have committed these acts, he stated that he had just lost his job, he had the stress of the divorce, and that doing this was out of character for him. He then reaffirmed that he did have sex with K.G. and that he was not denying the allegations.
 {¶ 7} K.G. testified at trial and her testimony was consistent with the statements that she gave to both Alison Ferne and Michelle Reich during the two separate interviews and was consistent with Appellant's confessions.
 {¶ 8} Appellant raises three Assignments of Error:
 {¶ 9} "I. THE APPELLANT'S RIGHT TO A GRAND JURY INDICTMENT UNDER THE OHIO CONSTITUTION, AND HIS DUE PROCESS RIGHTS UNDER BOTH THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BECAUSE OF THE INDICTMENT FAILS TO ALLEGE A MENS REA ELEMENT FOR THE OFFENSE OF RAPE AND THE OFFENSE OF GROSS SEXUAL IMPOSITION. *Page 4 
 {¶ 10} "II. THE APPELLANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED BECAUSE HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 11} "III. THE TRIAL COURT ERRED BY FAILING TO INCLUDE THE MENS REA ELEMENT OF THE OFFENSE OF RAPE AND THE OFFENSE OF GROSS SEXUAL IMPOSITION IN THE JURY INSTRUCTIONS."
 I III {¶ 12} In his first and third assignments of error, Appellant claims that his due process rights were violated because his indictment did not include a mens rea element for the offenses of rape and gross sexual imposition and that the trial court erred in not instructing the jury on a mens rea element with respect to both charges. We disagree.
 {¶ 13} Appellant first claims that his indictment violated State v.Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 (Colon I) because it did not specify the mens rea of purpose for the charges of rape or gross sexual imposition. He argues that the indictment was defective and therefore resulted in structural error.
 {¶ 14} Colon I, supra, concerned an indictment for robbery in violation of R.C. 2911.02(A)(2), which provides:
 {¶ 15} "No person, in attempting or committing a theft offense * * * shall do any of the following: * * *
 {¶ 16} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm."
 {¶ 17} The Colon I court held:
 {¶ 18} R.C. 2911.02(A)(2) does not specify a particular degree of culpability for the act of `inflict[ing], attempt[ing] to inflict, or threaten [ing] to inflict physical harm,' nor does the statute plainly indicate that strict liability is the mental standard. As a result, *Page 5 
[pursuant to R.C. 2901.21(B),] the state was required to prove, beyond a reasonable doubt, that the defendant recklessly inflicted, attempted to inflict, or threatened to inflict physical harm. Colon, 2008-Ohio-1624, ¶ 14,118 Ohio St.3d 26, 885 N.E.2d 917.
 {¶ 19} In the present case, Appellant was charged with and convicted of one count of rape in violation of R.C. 2907.02(A)(1)(b), and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). R.C. 2907.02(A)(1)(b) states:
 {¶ 20} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 21} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 22} R.C. 2907.05(A)(4) states:
 {¶ 23} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 24} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 25} Sexual contact means: "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "Sexual arousal" and "sexual gratification" are not defined in the Ohio Revised Code. See In re Anderson (1996), 116 Ohio App.3d 441, 443,688 N.E.2d 545. *Page 6 
However, "R.C. 2907.01(B) contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." State v. Gesell, 12th Dist. No. CA2005-08-367, 2006-Ohio-3621, at ¶ 23, quoting State v. Astley (1987),36 Ohio App.3d 247, 250, 523 N.E.2d 322.
 {¶ 26} Ohio's child rape statute imposes strict liability. State v.Wilson, 3rd Dist. No. 1-08-60, 2009-Ohio-1735, citingState v. Nicodemus, 10th Dist. No. 96APA10-1359,1997 WL 254095; State v. Moore, 8th Dist. No. 83692,2004-Ohio-5732, ¶ 16; In re Williams, 1st Dist. Nos. C-990841, C-990842, 2000 WL 1867467. "Consequently, there can be noColon-type error for an indictment that fails to charge a culpable mental state where no mental state is required for the commission of the offense." Wilson, supra, at ¶ 21.
 {¶ 27} Moreover, the offense of gross sexual imposition, as applied to a victim who is less than thirteen years of age, constitutes a strict liability crime which requires no proof of a precise culpable state of mind. See State v. Lawwill, 8th Dist. No. 91032,2009-Ohio-484, citing State v. Crotts, 8th Dist. No. 81477,2006-Ohio-1099, ¶ 6, discretionary appeal not allowed,109 Ohio St.3d 1497, 848 N.E.2d 859, 2006-Ohio-2762. See also State v. Tanner, 5th Dist. No. 06CA56, 2007-Ohio-1803. See also State v.West, 10th Dist. No. 06AP-11, 2006-Ohio-6259, at ¶ 17;State v. York, 6th Dist. No. WD-03-017, 2003-Ohio-7249.
 {¶ 28} The language of R.C. 2907.05(A)(4) mirrors that of R.C. 2907.02(A)(1)(b) in that both sections state that the offender should be found guilty when "[t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." Moreover, this court recently found inState *Page 7 v. Golden, 5th Dist. No. 2008-CA-00182, 2009-Ohio-1624, that review of R.C. 2907.06(A)(4), which states, "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person," indicates that the legislature intended to impose strict liability to protect those who are some of the most vulnerable members of our society, our children. We held that "[w]hile a statute's silence on the question of culpability does not necessarily indicate a purpose to impose strict liability, where the General Assembly specifically differentiates degrees of culpability within the same statute, that differentiation demonstrates a plain indication of its purpose to impose strict liability. State v. Spicer (March 30, 1994), 2nd Dist. No. 93CA55, citing State v. WAC (1981),68 Ohio St.2d 84, 428 N.E.2d 428." Id. at ¶ 49. Accordingly, we find that R.C. 2907.05(A)(4) imposes strict liability as well, when coupled with evidence of the proscribed sexual contact. See State v. West, supra. Therefore, there can be no Colon-type error in failing to assert a mens rea for the commission of gross sexual imposition under R.C. 2907.05(A)(4).
 {¶ 29} Regarding Appellant's claim that the trial court erred in failing to instruct the jury on a mens rea for both of these offenses, given our holding that both offenses are strict liability and that no mens rea applies, we find that the trial court did not err.
 {¶ 30} Appellant's first and third assignments of error are overruled. *Page 8 
 II. {¶ 31} In Appellant's second assignment of error, he alleges that he was denied the effective assistance of trial counsel.
 {¶ 32} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that his trial counsel acted incompetently. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, quoting Michel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158,164.
 {¶ 33} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland,466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690.
 {¶ 34} Even if a defendant shows that his counsel was incompetent, the defendant must then satisfy the second prong of the Strickland test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."Strickland, 466 U.S. at 694.
 {¶ 35} Appellant first alleges that counsel was ineffective for failing to raise the issue of the indictment's lack of mens rea elements and by not objecting to the lack of *Page 9 
mens rea in the jury instructions. Based on our ruling on Appellant's first and third assignments of error, we find this argument to be without merit.
 {¶ 36} Appellant next argues that counsel was ineffective for failing to object to the competency of the nine-year-old victim, K.G., to testify. Upon review of the in camera voir dire of the witness, we find that counsel was not in error in failing to object. The voir dire of the child witness was as follows:
 {¶ 37} "Mr. Thatcher: Thank you, Your Honor. [K.G.], would you tell us your full name?
 {¶ 38} "[K.G.]: * * *.
 {¶ 39} "Mr. Thatcher: How old are you?
 {¶ 40} "[K.G.]: Nine.
 {¶ 41} "Mr. Thatcher: When is your birthday?
 {¶ 42} "[K.G.]: July 7th.
 {¶ 43} * * *
 {¶ 44} "Mr. Thatcher: How old are you going to be?
 {¶ 45} "[K.G.]: Ten
 {¶ 46} "Mr. Thatcher: Do you know what year you were born?
 {¶ 47} "[K.G.]: 1998.
 {¶ 48} "Mr. Thatcher: Okay. What's your mom's name?
 {¶ 49} "[K.G.]: Melissa.
 {¶ 50} "Mr. Thatcher: Who lives in your house with you and Melissa?
 {¶ 51} "[K.G.]: Terry, Kathy, and Micky.
 {¶ 52} "Mr. Thatcher: Who is Kathy? *Page 10 
 {¶ 53} "[K.G.]: My grandma.
 {¶ 54} "Mr. Thatcher: Who is Micky?
 {¶ 55} "[K.G.]: My grandpa.
 {¶ 56} "Mr. Thatcher: Do you know your address?
 {¶ 57} "[K.G.]:707 Crest Drive.
 {¶ 58} * * *
 {¶ 59} "Mr. Thatcher: Did you just move recently?
 {¶ 60} "[K.G.]: No.
 {¶ 61} "Mr. Thatcher: Okay. Where do you go to school?
 {¶ 62} "[K.G.]: Wiggin Street.
 {¶ 63} "Mr. Thatcher: What grade are you?
 {¶ 64} "[K.G.]: Third.
 {¶ 65} "Mr. Thatcher: Who is your teacher?
 {¶ 66} "[K.G.]: Mrs. Fawcett.
 {¶ 67} "Mr. Thatcher: Okay. What grade were you in last year?
 {¶ 68} "[K.G.]: Second.
 {¶ 69} "Mr. Thatcher: Did you go to Wiggin Street last year?
 {¶ 70} "[K.G.]: No.
 {¶ 71} "Mr. Thatcher: What school did you go to?
 {¶ 72} "[K.G.]: Columbia.
 {¶ 73} "Mr. Thatcher: Do you know your teacher's name?
 {¶ 74} "[K.G.]: Mrs. D'ettorre. *Page 11 
 {¶ 75} "Mr. Thatcher: Okay. [K.G.], do you know the difference between telling the truth and telling a lie?
 {¶ 76} "[K.G.]: Yes.
 {¶ 77} "Mr. Thatcher: Is it good, bad, or do you know about telling a lie? Good, bad, or not?
 {¶ 78} "[K.G.]: It's bad.
 {¶ 79} "Mr. Thatcher: Why is telling a lie bad?
 {¶ 80} "[K.G.]: Because it can get someone really in trouble.
 {¶ 81} "Mr. Thatcher: Okay. [K.G.], if I told you that on the wall in the Judge's office here there is an elephant head, would that be the truth of a lie?
 {¶ 82} "[K.G.]: Lie.
 {¶ 83} "Mr. Thatcher: Do you know what kid of animal head that is up there?
 {¶ 84} "[K.G.]: Moose.
 {¶ 85} "Mr. Thatcher: Okay. [K.G.], we're going to maybe ask you some questions about something that happened last year. All right. Do you remember how old you were last year before your birthday last year?
 {¶ 86} "[K.G.]: Seven.
 {¶ 87} "Mr. Thatcher: Okay. When did you turn eight?
 {¶ 88} "[K.G.]: July 7th.
 {¶ 89} "Mr. Thatcher: Okay. Do you know your dad's name?
 {¶ 90} "[K.G.]: Shane.
 {¶ 91} "Mr. Thatcher: Does he live with you?
 {¶ 92} "[K.G.]: No. *Page 12 
 {¶ 93} "Mr. Thatcher: Okay. I think that's all I have, Your Honor.
 {¶ 94} * * *
 {¶ 95} "The Court: [K.G.], should you always tell the truth?
 {¶ 96} "[K.G.]: Yes.
 {¶ 97} "The Court: Okay. And what happens if you don't tell the truth? I think you already told me once. Say it again.
 {¶ 98} "[K.G.]: It can get someone in trouble."
 {¶ 99} Based upon this exchange, the child was clearly competent to testify. Appellant's argument is without merit.
 {¶ 100} Appellant next argues that counsel was ineffective for failing to call certain witnesses. He first claims that counsel should have called witnesses or introduced evidence of Appellant's mental ability to comprehend the consequences of confessing in order to prove that he did not knowingly confess to Captain Brenneman.
 {¶ 101} Testimony presented at trial shows that Appellant clearly understood the consequences of his actions in speaking to the police and in testifying before the Grand Jury. The law requires that a defendant who is subject to custodial interrogation must be advised of his or herMiranda rights and must make a knowing, voluntary, and intelligent waiver of those rights before statements obtained during the interrogation will be admissible at trial. State v. Treesh (2001),90 Ohio St.3d 460, 470, 739 N.E.2d 749. In this case, Appellant was read his rights and signed a Miranda waiver prior to his interrogation and again acknowledged under oath during his Grand Jury testimony that he knew that he had the right to remain silent, yet he chose to speak. Appellant's competency was not in question during the trial and Appellant took the stand to testify in *Page 13 
his own defense. The fact that he twice confessed to his crimes and suffered from anxiety does not make him incompetent to testify or to confess.
 {¶ 102} Appellant also argues that counsel was ineffective for failing to call certain "exculpatory" witnesses. We disagree. Again, Appellant confessed, twice, to the crimes, and the testimony of K.G. corroborated that no one else was present when Appellant was sexually assaulting her. Moreover, Appellant has failed to provide any evidence as to what these witnesses would have contributed at trial and since such matters are outside the record, they are inappropriate for appellate review. See App. R. 16(A)(7).
 {¶ 103} Appellant also alleges that counsel was ineffective for failing to file a motion to suppress Appellant's confession and for failing to object to the admission of State's Exhibits six and seven, which were the confession of Appellant to Captain Brenneman. When counsel's alleged ineffectiveness involves the failure to pursue a motion or legal defense, this actual prejudice prong ofStrickland breaks down into two components. First, the defendant must show that the motion or defense "is meritorious," and, second, the defendant must show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. See Kimmelman v. Morrison (1986), 477 U.S. 365, 375,106 S.Ct. 2574, 2583; see, also, State v. Santana (2001),90 Ohio St.3d 513, 739 N.E.2d 798 citing State v. Lott (1990), 51 Ohio St.3d 160,555 N.E.2d 293.
 {¶ 104} Appellant's confession was knowing, voluntary, and intelligent. He indicated that he knew his rights and he chose to waive those rights and talk with Captain Brenneman. No evidence was presented that Appellant did not understand his *Page 14 
rights before confessing. Appellant has failed to demonstrate in any manner that his motion or objection would have been granted. As such, his argument is again without merit.
 {¶ 105} Appellant also argues that counsel was ineffective for failing to furnish mitigating factors to the court during the presentence investigation. "The decision to forgo the presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel." State v. Keith (1997), 79 Ohio St.3d 514, 536,684 N.E.2d 47. "In this case, counsel's failure to present mitigating evidence was not a demonstrably deficient trial strategy in light of Appellant's decision to waive such a presentation. Arguably, it was consistent with appellant's claim of innocence." Id.
 {¶ 106} In any event, we cannot say that Appellant suffered prejudice. To do so would require us to find "that there was mitigating evidence counsel failed to present and that there is a reasonable probability that the evidence would have swayed" the court to impose a lesser sentence than the mandatory life without the possibility of parole sentence required by law on the count of child rape. Moreover, it would require us to find that the court acted outside its discretion in imposing the maximum sentence for the count of gross sexual imposition. "Establishing that would require proof outside the record, such as affidavits demonstrating a lack of effort to contact witnesses or the availability of additional mitigating evidence. Such a claim is not appropriately considered on a direct appeal. See State v. Scott (1989),63 Ohio App.3d 304, 308, 578 N.E.2d 841, 844 (claim of failure to present mitigating evidence is properly considered in a postconviction proceeding because evidence in support of claim could not be presented on direct appeal)." Id. *Page 15 
 {¶ 107} Appellant's final allegation of ineffective assistance focuses on counsel's failure to file an affidavit of indigency prior to sentencing in order to avoid being sanctioned with court costs. However, the Ohio Revised Code mandates that court costs shall be assessed against all defendants. State v. Threatt (2006), 108 Ohio St.3d 277, citing R.C. 2947.23. While a court may waive payment of costs upon the motion of the defendant at the time of sentencing, there is no indication in the record that counsel knew Appellant was indigent prior to sentencing. As there is no information in the record concerning counsel's knowledge of Appellant's indigency status prior to sentencing, we cannot rule that counsel was ineffective.
 {¶ 108} Moreover, trial courts may still impose costs on indigent defendants. Threatt, supra. In determining whether a court incorrectly imposed costs on an indigent defendant, we review such a claim under an abuse of discretion standard. Id. "The purpose of determining before or during trial whether a defendant is indigent is to protect his or her constitutional rights, such as the right to counsel, from infringement caused by his or her indigency. Threatt, supra, at ¶ 14, citingState v. Engle (Mar. 19, 1999), Greene App. No. 98-CA-125. Thus, that protection does not shelter a convicted defendant from other burdens, such as court costs." Id. Under such a standard, we could not conclude that the trial court abused its discretion in imposing court costs or that counsel was ineffective for requesting that costs should be waived.
 {¶ 109} Appellant's second assignment of error is overruled. *Page 16 
 {¶ 110} Based on the foregoing, we find Appellant's assignments of error to be without merit. The judgment of the Knox County Court of Common Pleas is affirmed.
By: Delaney, J. Gwin, P.J. and Wise, J. concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Knox County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1